UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>DONOVAN SORRELL<br><br>                      Defendants. | CRIMINAL ACTION<br>NO. 05-10016 RCL |

**DEFENDANT DONOVAN SORRELL'S SENTENCING MEMORANDUM**

## I.    INTRODUCTION

Defendant Donovan Sorrell, 37, is an honorably discharged Jamaican Army veteran with no prior history of criminal activity and a history of steady employment as a taxi driver and farmer. Until 2004, Mr. Sorrell was a productive member of Jamaican society and the primary bread-winner for his family. Unfortunately, in 2004, he made a serious mistake: he agreed to transport drugs into the United States. That mistake has, to date, resulted in his 17-month incarceration in a foreign country and virtually complete isolation from his family. Upon his arrest, Mr. Sorrell promptly agreed to cooperate with law enforcement agents, leading to the arrest and indictment of two other individuals. Since his arrest, more than 17 months ago, Mr. Sorrell has continued to cooperate with law enforcement agents and officials.

In light of Mr. Sorrell's history and his prompt cooperation, Defendant Donovan Sorrell respectfully requests that this Court impose a sentence of time served.

B3196601.3

## II. MR. SORRELL'S CONDUCT AND PROMPT COOPERATION

The circumstances that ultimately lead to Mr. Sorrell's arrest and subsequent incarceration arose in approximately August 2004, when he was asked and agreed to bring drugs into the United States.

In total, Mr. Sorrell made three trips to the United States. In September 2004, Mr. Sorrell made his first trip ever to the United States, and carried cocaine. On his return to Jamaica, Mr. Sorrell was paid $3,500, which he used, in significant part, to pay the funeral expenses of one of his sisters and to pay for treatment of his fiancée's diabetes. Approximately one month later, in October 2004, Mr. Sorrell made a second trip. (He was never paid for this trip.) Subsequently, on a promise that he would be paid for the second trip and receive additional money, Mr. Sorrell made a third trip to Boston, landing on November 23, 2004, where, on arrival, the United States Customs and Border Protection Agency searched his luggage, discovered the cocaine, and arrested Mr. Sorrell.

As disclosed in the Presentence Report ("PSR"), Mr. Sorrell immediately accepted responsibility for his conduct and agreed to cooperate with law enforcement. As part of his cooperation, Mr. Sorrell agreed to proceed with his existing instructions concerning the delivery of the cocaine.

As originally planned, on November 24, 2004, Mr. Sorrell checked into the appointed hotel, the Best Western in Quincy, Massachusetts, in the presence of law enforcement agents. Subsequently, in the presence of law enforcement agents, Mr. Sorrell called Jamaica and spoke to a man he knew as "Bones," advising that he had arrived and explaining that his flight had been delayed. Soon afterwards, Defendants Carr and McDonald arrived at the hotel. Defendant Carr came to Mr. Sorrell's hotel room and picked up the cocaine while law enforcement agents were

posted outside of the hotel room and in an adjacent room. Thereafter, in the hotel's parking lot, law enforcement agents arrested both Defendants Carr and McDonald.

After the arrest of Defendants Carr and McDonald, from November 2004 through to the present (a period that will equal 17 months, 15 days on the date of his sentencing), Mr. Sorrell has been ready, willing, and able to cooperate with law enforcement officials and has in fact done so. Mr. Sorrell agreed to, and did later, plead guilty and has participated in multiple debriefings with government agents. He was prepared to testify at the trial of defendant Carr, scheduled for February 6, 2006, but Carr agreed to plead guilty on the eve of trial, something Mr. Sorrell's cooperation with the government certainly precipitated. Defendant McDonald's case is on appeal to the First Circuit; Mr. Sorrell has provided the government with information concerning McDonald, and remains prepared to testify at McDonald's trial when it occurs.

### III.    THE GUIDELINES CALCULATION

The Probation Department has calculated Mr. Sorrell's guideline range as 37 to 46 months. Mr. Sorrell does not dispute that calculation.

### IV.    MR. SORRELL'S FULL COOPERATION WARRANTS DEPARTING FROM THE GUIDELINES

As of the filing of this Sentencing Memorandum, the government has not yet filed a Motion for Downward Departure based on Substantial Assistance under U.S.S.G. 5K 1.1. Defendant expects that the government will file such a Motion, as it is clear that he has "provided substantial assistance in the investigation or prosecution of another person who has committed an offense…". As the Guidelines provide:

   a)   The appropriate reduction shall be determined by the court for reasons
        stated that may include, but not limited to, consideration of the following:

        (1)   the court's evaluation of the significance and usefulness of the defendant's
              assistance, taking into consideration the government's evaluation of the
              assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant:

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

The sentence defendant seeks -- a sentence of time served -- is appropriate given these factors. Taking statutory good time credit into account, see PSR ¶¶95-96, a "time served" sentence is the equivalent of a 20-month sentence, which would reflect a 17-month (or 45%) reduction from the low end of the Guidelines range. The factors set out in §5K1.1 counsel in favor of such a sentence. Mr. Sorrell's cooperation was immediate (Factor 5). The cooperation has been both significant and useful, leading directly to the arrest of the defendants and the guilty plea of Carr (Factor 2). Mr. Sorrell's cooperation has been truthful, complete, and reliable (Factor 2). He has participated in numerous debriefings with the government, would have testified at Carr's trial (had one been necessary), and remains prepared to testify at McDonald's trial (Factor 3 ["nature and extent" of assistance]).[1] And his cooperation has come to the attention of other pre-trial detainees, a fact requiring him to request transfer to a difference pre-trial unit (Factor 4).

---

[1] If sentenced to time served, defendant will be deported to Jamaica. He has informed the government of his unequivocal intention to cooperate fully with government officials in his return to the United States for any trial of McDonald. Defense counsel has suggested that, to the extent the government is concerned about the Defendant's continuing cooperation or his return to testify, the government should move to depose Mr. Sorrell under Fed. R. Crim. P 15. In light of the timeliness of Mr. Sorrell's cooperation, and its results, any request by the government that the Court impose a sentence sufficient to hold Mr. Sorrell in the United States until the completion of Mr. McDonald's appeal (an appeal the government has already delayed by seeking a month's extension for its brief to be filed,) see Docket Sheet (attached as Exhibit A) is inappropriate. Such an outcome would amount to holding Mr. Sorrell as a material witness. If, in fact, he were so held, Mr. Sorrell would have the *right* to request that his deposition be taken. See Fed. R. Crim P. 15(a)(2).

## V.  TIME SERVED IS SUFFICIENT AND NOT GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF SENTENCING.

In *United States v. Booker*, the Supreme Court held that the United States Sentencing Guidelines provisions concerning fact-finding and sentencing violated the Sixth Amendment to the United States Constitution. *United States v. Booker,* 543 U.S. 220, 226, 125 S. Ct. 738, 746 (2005). In the Court's "remedy" opinion, the Court held that "the provision of the federal sentencing statute that makes the Guidelines mandatory [is] incompatible with today's constitutional holding" and therefore "must be severed and excised . . . " *Id.* at 245, 125 S. Ct. at 756. The Court concluded that:

> So modified, the Federal Sentencing Act . . . makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (sup. 2004), but permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (sup. 2004).

*Id.* at 245, 125 S. Ct. at 757. As the First Circuit held, the Guidelines are entitled to "substantial weight, [not] controlling weight," *United States v. Jimerez-Belten*, 440 F. 3d 514 (1st Cir. 2006), and the Court must also consider the other factors set forth in 18 U.S.C. §3553.

When imposing a sentence, 18 U.S.C. § 3553(a) requires that:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.

*See* 18 U.S.C. § 3553(a) (emphasis added).

The statute sets out the factors that a Court must consider in imposing an appropriate sentence. 18 U.S.C. § 3553(a) provides, as applicable:

> The court, in determining the particular sentence to be imposed, shall consider--
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines--(i) issued by the Sentencing Commission . . .

  (5) any pertinent policy statement--

    (A) issued by the Sentencing Commission . . . [and]

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*See* 18 U.S.C. § 3553(a).

As discussed below, consideration of these factors leads to but one conclusion -- a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing is a time period no greater than the 17 months that Mr. Sorrell has already served. *See* 18 U.S.C. § 3553(a).

**A. Mr. Sorrell's Background and History, Considered in the Context of His Cooperation, A Warrant "Time-Served" Sentence.**

A review of Mr. Sorrell's history and characteristics makes it abundantly clear that his recent actions were an anomaly in an otherwise lawful and productive life.

As noted in the PSR, from the earliest stages of his life, Mr. Sorrell was a productive member of society upon whom many in his family relied. The youngest of ten children, Mr. Sorrell grew up with both parents. Mr. Sorrell's father was a sugar-cane farmer and, from an early age, he worked along side everyone else in his family. As noted in the PSR, Mr. Sorrell left high school after achieving the United States equivalent of a 10th grade education to support his family.

Later, in approximately 1988, Mr. Sorrell attended agriculture school. Upon finishing agriculture school, in approximately 1989, Mr. Sorrell entered and spent twelve years in the Jamaican Army. While in the military, Mr. Sorrell participated in peacekeeping missions in foreign countries and security exercises within Jamaica. Mr. Sorrell was honorably discharged from the Army in approximately 1992, after suffering injuries to his neck and eye arising from a shooting incident. Mr. Sorrell is eligible for and collects a pension for his years of service and injury. After his discharge from the military, Mr. Sorrell raised chickens and drove a taxi.

During the period of his military service, Mr. Sorrell married and later divorced Judith Sorrell. Mr. Sorrell has two children with Mrs. Sorrell - Raneek (16) and Romane (13). Mrs. Sorrell continues to reside in Jamaica with their two children. While Mr. Sorrell did not have physical custody of his children, prior to his incarceration, he regularly visited them and provided them with financial support. Indeed, it appears that through Mr. Sorrell's financial support, his children are able to attend school. *See* letter from Ms. Monica Ellis, attached hereto as Exhibit B.

For the past thirteen years, as noted in the attached letter, Mr. Sorrell has been involved with and engaged to Ms. Monica Ellis. *See* Exhibit B. Indeed, throughout Mr. Sorrell's period of incarceration, despite the difficulty in communicating, Ms. Ellis has continued to write to Mr.

Sorrell and administer his affairs in Jamaica. As noted above, a portion of the money earned for his first trip to the United States, Mr. Sorrell spent to pay for Ms. Ellis' medical care.

In addition, Mr. Sorrell also provides support for his mother and younger sister. *See* Exhibit B. As Ms. Ellis writes, Mr. Sorrell's 80 year old mother and younger sister, who suffers from schizophrenia, both rely upon him for support. Indeed, as recounted in the PSR, Mr. Sorrell moved from his home with Ms. Ellis to care for his sister Jean after she suffered a nervous breakdown.

B.  **In the Context of Defendant's Cooperation, Considerations of Seriousness of the Offense, Respect for Law, Just Punishment, Adequate Deterrence, and Public Protection Are Adequately Served By A "Time-Served" Sentence.**

As noted above, Mr. Sorrell promptly acknowledged the wrongfulness of his conduct and his cooperation enabled the arrest and indictment of Defendants Carr and McDonald. In these circumstances, sentencing Mr. Sorrell to a period no longer than time served is sufficient to reflect the seriousness of his offense, to promote respect for the law, and provide just punishment.

C.  **In the Context of Defendant's Cooperation, the Goal of Adequate Deterrence Is Served By A "Time-Served" Sentence.**

In this case, consideration of this factor similarly warrants a time-served sentence, Mr. Sorrell has been incarcerated for the past 17 months. His experiences during this time -- imprisonment in a foreign country and isolation from his family -- provide a powerful deterrent to keep him (and others) from engaging in criminal conduct in the future. To impose a lengthier sentence -- especially on one who wishes nothing more than to be immediately deported home upon his release - would do little, if anything, to satisfy the deterrent aims of incarceration and would in fact send the wrong message to would-be cooperators.

D.  **Mr. Sorrell's Imminent Deportation Negates Any Consideration of Training, Health Care, and Correctional Treatment Benefits.**

Mr. Sorrell wishes to return to and will be deported to Jamaica upon his release. Mr. Sorrell is adequately educated to return to his former life. He previously attended, and graduated from, agricultural school in Jamaica and was, prior to his arrest, a chicken farmer and cab driver. He intends to continue raising chickens on his return to Jamaica. Mr. Sorrell does not have a history of health problems or drug addiction for which he had been unable to receive medical treatment. Mr. Sorrell is not a repeat offender and does not have a history of criminal conduct warranting correctional treatment. On these bases, sentencing Mr. Sorrell to time served is appropriate.

E.  **A "Time-Served" Sentence Would Avoid Unwarranted Sentencing Disparities.**

Finally, consideration of this last factor warrants sentencing Mr. Sorrell to a "time-served" sentence. Absent Mr. Sorrell's cooperation, Defendants Carr and McDonald would likely still be roaming the streets of Boston. Given the timeliness and nature of the defendant's cooperation and his lack of a prior record, it is clear that a sentence substantially greater than time served would create an unwarranted disparity between Mr. Sorrell and similarly situated cooperators. Certainly, the government's decision to appeal this Court's order suppressing McDonald's statements is not an adequate justification to treat Mr. Sorrell more harshly than other cooperators.

## VI.  CONCLUSION

For all of the foregoing reasons, therefore, Defendant Donovan Sorrell respectfully requests that this Court sentence him to incarceration for a period no longer than the time he has already served.

Respectfully submitted,
**DONOVAN SORRELL**

By his attorneys,

/s/ Martin F. Murphy
Martin F. Murphy, BBO #363250
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1213 (phone)
(617) 832-7000 (facsimile)
mmurphy@foleyhoag.com

Sarah G. Kim, BBO #657852
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000 (phone)
(617) 951-8736 (facsimile)
sarah.kim@bingham.com

## CERTIFICATE OF SERVICE

  I, the undersigned, certify that on this 3rd day of May 2006, I served a true and correct copy of the foregoing Defendant Donovan Sorrell's Sentencing Memorandum electronically to counsel of record and to

Ms. Jennifer D. Sinclair
Senior U.S. Probation Officer
U.S. District Court
Probation Office
1 Courthouse Way
Suite 1200
Boston, MA 02210

                /s/ Martin F. Murphy

# Exhibit A



If you view the full docket, you will be charged for 4 Pages    $ 0.32

## US Court of Appeals for the First Circuit
## Case Summary

```
Court of Appeals Docket #: 06-1375                         Filed: 3/3/06
Nsuit:   0  (Criminal or NOT SET)
US v. McDonald
Appeal from: U.S. District Court of MA

Lower court information:
     District: 0101-1 : 05-10016              lead: 05-10016
     Ordering Judge: Reginald C. Lindsay
```

| Date | Entry |
|---|---|
| 3/13/06 | APPEARANCE filed by John M. Moscardelli for Appellee Michael McDonald. [1100442-1] [06-1375] (geor) |
| 3/15/06 | ATTORNEY Dina Michael Chaitowitz for Appellant US added to case. [06-1375] (geor) |
| 3/15/06 | APPEARANCE filed by Dina Michael Chaitowitz for Appellant US. [1101156-1] [06-1375] (geor) |
| 3/22/06 | Transcript Report/Order Form filed by Appellant US. Transcript is not necessary on appeal. [06-1375] (geor) |
| 3/22/06 | DOCKETING STATEMENT filed by Appellant US. [06-1375] (geor) |
| 3/23/06 | BRIEFING SCHEDULE. Appellant's Brief due 5/2/06. Appendix due 5/2/06. [06-1375] (geor) |
| 4/4/06 | NOTICE GIVEN by AUSA Dina Michael Chaitowitz that Glenn Alexander MacKinlay and John A. Wortmann for Appellant US that an appearance will not be filed and are no longer with this case. [06-1375] (geor) |
| 4/24/06 | MOTION filed by Appellant US to extend time to file Appellant's brief and appendix until 6/2/06. Ext. Code: OTH. Certificate of service dated 4/24/06. [06-1375] (geor) |
| 4/25/06 | ORDER entered. Upon consideration of motion of appellant, It is ordered that the time for the appellant to file its brief and appendix to the brief be enlarged to and including 6/2/06. [06-1375] (geor) |

- 2 -

# Exhibit B

## Typed "Transcript" of Attached Letter from Monica Ellis

                                          Glendevon P.O. #
                                          Montego Bay
                                          St. James
                                          Jamaica WI

                                          February 2006

To Whom it May Concern:

Dear Sir/Madam:

    A pleasant day to you.

    I MONCIA ELLIS has known DONOVAN SORRELL for the pass thirteen years. He has also been my fiancé for the same period. He has treated me well. He is a reliable and a very dependable person who has never been in trouble with the law of any sort. Therefore I am asking you to be lenient with him because his family is very dependant upon him especially his mother (age 80) and his little sister who has a very bad illness (schizophrenia). His children are also suffering from his absence. They are unable to go to school often because of financial difficulties. If Donovan is given a second chance I will assure you that he will not make the same mistake twice. I will be supportive of him through his endeavors. Please I am begging the Court to be lenient with him. I am begging for your sympathy even if not for him but for the sake of his mother, sister and children.

                                          Yours respectfully,

                                          Moncia Ellis

Glendevon P.O. #,
Montego Bay,
ST James
Jamaica w.I.
Feburary 2006.

To whom it may concern,

Dear Sir/Madam,
          A pleasant day to you. I MONCIA ELLIS has known DONOVAN SORRELL for the pass thirteen years. He has also been my fiance for the same period. He has treated me well. He is a realiable and a very dependable person who has never being in trouble with the law of any sort. Therefore I am asking you to be lenient with him, because his family is very dependent upon him especially his mother (age 80) and his little sister who has a very bad illness (Skitafrania). His children is also suffering from his absence. they are unable to go to school often because of financial difficulties. If Donovan is given a second chance I will assure you that he will not make the same mistake twice. I will be supportive of him true his endeavours. please I am begging

the court to be lenient with him. I am begging for your sympathy even if not for him, but for the sake of his mother, sister and children.

Yours Respectfully
MONICA ELLIS